

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 18, 2023

**VIA ECF**
Honorable Katherine Polk Failla
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:   *United States v. Andre James*, 22 Cr. 549 (KPF)

Dear Judge Failla:

    The defendant in this case, Andre James, is scheduled to be sentenced on May 25, 2023, having pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 2.  For the reasons explained below, the Government submits that a sentence at the top of the applicable Guidelines range of 27 to 33 months' imprisonment is warranted in light of the nature and circumstances of the offense, the history and characteristics of the defendant, the need to protect the public, and to afford adequate deterrence of future criminal conduct.

    **I.**    **Offense Conduct and Procedural History**

    On or about July 24, 2022, at approximately 7:30 p.m., Parkchester Department of Public Safety Officers were in uniform and patrolling on bicycles in the vicinity of 1569 Metropolitan Avenue in the Bronx, New York (the "Building").  (PSR ¶ 8).  While on patrol, the officers heard via their radio that a black male wearing a white t-shirt and blue jeans had propped open the front door of the Building.  The officers rode their bicycles towards the Building and observed the front entrance door to be propped open, but did not observe the individual described.  (*Id.* ¶¶ 9–10).  The officers closed the door, left the Building, and remained nearby.  (*Id.* ¶ 10).

    Approximately ten to twenty minutes later, the officers observed the defendant, who fit the radio description, walk towards the Building.  (*Id.* ¶ 11).  The defendant did not use a key fob to enter the Building; rather, he waited for a resident to let him inside.  (*Id.* ¶ 12).  The officers followed the defendant into the lobby, approached him, and asked him several questions.  (*Id.*).  During this exchange, the officers observed that the defendant resembled an individual whose photograph was depicted on the "be-on-the-lookout" ("BOLO") flyer that was presented to them during that afternoon's roll call prior to the start of their patrol.  (*Id.* ¶ 16).  The BOLO contained three photographs of the defendant and reported that there was probable cause to arrest him for criminal mischief on account of his breaking the glass door to the Building on May 14, 2022 and May 19, 2022.  (*Id.*).  The officers informed the defendant that their supervisor needed to talk to

him because he did not have ID in his possession, (*id.* ¶ 17), but the defendant walked out of the Building. (*Id.* ¶ 18).

While outside of the Building, additional officers approached the defendant, showed him the BOLO, and informed him that he was being detained for breaking the glass door to the Building in May 2022. (*Id.* ¶ 19). The defendant denied being at the Building in May 2022, argued with the officers, and attempted to run. (*Id.* ¶¶ 19–20). The officers apprehended the defendant and placed him under arrest. (*Id.* ¶ 20).

After the officers placed him under arrest, they searched him and retrieved from his person a black fanny pack. (*Id.* ¶ 21). Inside the fanny pack was a loaded 9mm Luger Caliber Semi-Automatic Smith & Wesson. (*Id.*).

Prior to July 24, 2022, the defendant had been convicted of attempted murder in violation of New York Penal Law § 125.25(1), a felony, for which he was sentenced to six years' imprisonment. (*Id.* ¶ 42).

The defendant was initially charged for the July 24, 2022 offense by the Bronx County District Attorney's Office with Criminal Possession of a Weapon in the Second Degree, in violation of New York Penal Law § 265.03(1)(b), and related charges. He was arrested on July 24, 2022 and held without bail. On September 29, 2022, the defendant was charged by federal complaint for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 2. On October 4, 2022, the defendant was transferred from Riker's Island into the custody of the Bureau of Prisons where he has remained during the pendency of this case.

On October 12, 2022, a Grand Jury sitting in this District returned an Indictment charging the defendant with being a felon in possession of a firearm. On February 3, 2023, the defendant pled guilty to the one-count Indictment after receiving a letter from the Government pursuant to *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991). As set forth in the *Pimentel* letter, the Government believes the defendant's offense level is 17 and criminal history category is II, resulting in an applicable Guidelines range of 27 to 33 months' imprisonment. Probation concurs with this Guidelines calculation. (PSR ¶ 89 and p.24).

Although Probation recommends a variance is appropriate "taking into account the defendant's lack of youthful guidance" and recommends a sentence of 24 months' imprisonment (*id.* at p. 24–26), for the reasons discussed below, the Government believes that a sentence at the top of the applicable Guidelines range, 33 months' imprisonment, is appropriate in this case.

II.   **Discussion**

1. **Applicable Law**

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating

the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant;

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. The Defendant's Prior Conviction for Attempted Murder Constitutes a Crime of Violence.

As calculated in the Government's *Pimentel* letter and the PSR, (PSR ¶ 31 and p. 21–22), the defendant's 2013 conviction for attempted murder, in violation of New York Penal Law § 125.25(1), qualifies as a crime of violence. The defendant's arguments to the contrary should be rejected.

First, as the defendant concedes, the Second Circuit has held that the attempt to commit murder under Section 125.25(1) satisfies "the elements clause of section 924(c)." *United States v. Pastore*, 36 F.4th 423, 430 (2d Cir. 2022) ("[B]ecause second degree murder under New York law is a crime of violence, there can be no doubt that attempt to commit second degree murder under New York law is itself categorically a crime of violence."). Nor does the defendant dispute that the reasoning of *Pastore* supports the conclusion that attempted murder likewise satisfies the elements clause of U.S.S.G. § 4B1.2(a)(1). The Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022) does not change that analysis.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under Section 924(c)'s elements clause because no element of the offense requires proof that the defendant used, attempted to use, or threatened to use force. *Taylor*, 142 S.

Ct. at 2020–21. This is because a completed Hobbs Act robbery can be committed by threat alone, *see* 18 U.S.C. § 1951(b), which means that a defendant may be convicted for *attempted* Hobbs Act robbery if all he does is attempt to threaten someone. *Id.* Since the elements clause covers attempts to use force and threats to use force, but not attempts to threaten the use of force, the Court held that attempted Hobbs Act robbery falls outside the elements clause. *Id.* By contrast, it is not possible to commit murder by threat alone because murder always requires use of force. *Feliz v. United States*, 2022 WL 4554460, at *6 (S.D.N.Y. Sept. 29, 2022) (distinguishing *Taylor* and citing *United States v. Sierra*, 782 F. App'x 16, 20 (2d Cir. 2019) ("We have repeatedly treated it as self-evident that under New York law attempted murder is a crime unmistakably involving an attempted use of physical force.") (internal quotation marks omitted))). "It follows then—as the Second Circuit has repeatedly held, []—that attempted murder requires the attempted use of force, which is indisputably covered by the elements clause." *Id.* As the Fourth Circuit explained in *Taylor*, itself, "where a crime of violence requires the use of physical force . . . the corresponding attempt to commit that crime necessarily involves the attempted use of force." *United States v. Taylor*, 979 F.3d 203, 209 (4th Cir. 2020), *aff'd*, 142 S. Ct. 2015 (2022).

Following *Taylor*, multiple Circuits have reaffirmed that attempted murder still qualifies as a crime of violence. *See, e.g.*, *United States v. Todji Kijuan Martin*, No. 22-5278, 2023 WL 2755656, at *7 (6th Cir. Apr. 3, 2023) (distinguishing *Taylor* and holding that attempted second degree murder constitutes a crime of violence); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1346–47 (11th Cir. 2022) ("We read *Taylor* to hold that, where a crime may be committed by the threatened use of force, an attempt to commit that crime—*i.e.*, an attempt to threaten—falls outside the elements clause. But, unlike Hobbs Act robbery, a criminal cannot commit murder by threat. Instead, the completed crime of murder *always* requires the use of physical force 'because it is impossible to cause death without applying force that is capable of causing pain or physical injury.'") (quoting *United States v. Sanchez*, 940 F.3d 526, 534–35 (11th Cir. 2019)); *id.* at 1347 ("Because the completed crime of murder has as an element the use of force, the *attempt* to commit murder has as an element the attempted use of force."); *see also United States v. Baez-Martinez*, 950 F.3d 119, 132 (1st Cir. 2020) (holding, before *Taylor*, that "if murder requires violent force because death results, then attempted murder does, too, because the defendant attempted to reach that result"); *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018) (holding, before *Taylor*, that "an attempt to cause death would also require the use or attempted use of force").[1]

*Second*, completed murder under Section 125.25(1) is a crime of violence, whether considered under the elements clause of U.S.S.G. § 4B1.2(a)(1)[2] or the enumerated offenses clause

---

[1] The defendant's citation to *People v. Naradzay*, 11 N.Y.3d 460, 466 (2008) is not to the contrary. There, the court found that the jury could reasonably conclude that the only reason the defendant did not commit homicide was because "an observant motorist made a 911 call and law enforcement authorities responded promptly" before the defendant used his shotgun. *Id.* at 468. The decision is not in conflict with settled law that the completed crime of murder always requires the use of force or that attempted murder requires the attempted use of force.

[2] "There is no question that intentionally causing the death of another person involves *the use of force*." *Pastore*, 36 F.4th at 429 (emphasis added); *see Stone v. United States*, 37 F.4th 825, 832-33 (2d Cir. 2022) (murder in aid of racketeering predicated on murder in violation of N.Y. Penal Law § 125.25(1) "necessarily involves the use of force" and is a crime of violence); *United States*

of U.S.S.G. § 4B1.2(a)(2).[3] Accordingly, pursuant to Application Note 1 of U.S.S.G. § 4B1.2, attempted murder also qualifies as a crime of violence. Despite the defendant's argument that Application Note 1 should not be considered, the Second Circuit has repeatedly upheld the validity of Application Note 1 and applied the Note to include attempts in both controlled substance and crime of violence offenses.

The Second Circuit has explained that "Application Note 1 is authoritative because it interprets and explains U.S.S.G. § 4B1.2 by listing offenses that constitute 'controlled substance offenses' and 'crimes of violence.'" *United States v. Jackson*, 60 F.3d 128, 131 (2d Cir. 1995). Indeed, the Second Circuit has explicitly applied Application Note 1 to hold that several inchoate offenses qualify as crimes of violence. *See United States v. Hurrell*, 55 F.3d 122, 123-24 (2d Cir. 2009) (applying Application Note 1 and prior holding that New York burglary in the third degree is a crime of violence to conclude that an attempt to commit that offense is likewise a crime of violence); *United States v. Terry*, 100 F.3d 945, 1996 WL 80015 (2d Cir. Feb 23, 1996) (table decision) (relying on Application Note 1 to conclude that conspiracy to commit Hobbs Act robbery is a crime of violence under U.S.S.G. § 4B1.2); *United States v. Spencer*, 955 F.2d 814, 820 (2d Cir. 1992) (New York attempted robbery in the third degree qualifies as a crime of violence).[4]

Despite this Second Circuit authority, the defendant argues that Application Note 1 of U.S.S.G. § 4B1.2(a) is invalid because it improperly expands the definition of "crime of violence" beyond the text of the Guideline to include "attempts." As an initial matter, controlling Second Circuit precedent has repeatedly upheld Application Note 1 as a valid interpretation of "controlled substance offense." *United States v. Richardson*, 958 F.3d 151, 154 (2d Cir.) (explaining that

---

*v. Laurent*, 33 F.4th 63, 80, 89 (2d Cir. 2022) (racketeering predicated on murder in violation of N.Y. Penal Law § 125.25(1) is a crime of violence); *United States v. Martinez*, 991 F.3d 347, 355 n.4 (2d Cir. 2021) (explaining that Second Circuit "does not question whether intentional murder under New York law is a violent crime"), *cert. denied*, 142 S. Ct. 179 (2021); *United States v. Scott*, 990 F.3d 94, 100 (2d Cir. 2021) (en banc) (rejecting reasoning that "would preclude courts from recognizing even intentional murder [under N.Y. Penal Law § 125.25(1)] as a categorically violent crime"), *cert. denied*, 142 S. Ct. 397 (2021); *see also United States v. Castleman*, 572 U.S. 157, 169 (2014) ("[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force.").

[3] *See Lugo v. United States*, No. 01 Cr. 922 (NG), 2021 WL 6883419, at *8 (E.D.N.Y. May 14, 2021) (concluding that "Penal Law § 125.25(1) corresponds to the generic definition of murder"); *see also Santana-Felix v. Barr*, 924 F.3d 51, 53, 56–57 (2d Cir. 2019) (concluding that Section 125.25 "categorically fits within the generic federal definition of a corresponding offense" under the Immigration and Nationality Act, namely "murder") (internal quotation omitted).

[4] Thus, the Government respectfully submits that *United States v. Chappelle*, No. 13 Cr. 986 (LTS), 2020 WL 5441541 (S.D.N.Y. Sept. 9, 2020), which held that Application Note 1 is invalid as applied to a conspiracy to commit a crime of violence, was wrongly decided and should not be followed. To be sure, the Second Circuit affirmed in *United States v. Chappelle*, 41 F.4th 102 (2d Cir. 2022), but it did so on an alternative ground, that completed Hobbs Act robbery is not a "crime of violence" as defined in U.S.S.G. § 4B1.2(a). The Second Circuit did not address the validity of the district court's ruling regarding Application Note 1. *Id.* at 105, 107, 111-12.

precedent "precludes any further argument 'that Application Note 1 improperly conflicts with the guideline text'" (quoting *United States v. Tabb*, 949 F.3d 81, 87 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2793 (2021), and citing *Jackson*, 60 F.3d 128), *cert. denied*, 141 S. Ct. 423 (2020). Furthermore, as noted above, the Second Circuit has repeatedly applied Application Note 1 to the definition of "crime of violence," and other circuits have likewise upheld it. *See, e.g.*, *United States v. Garcia*, 946 F.3d 413, 418 (8th Cir. 2019) (accomplice to battery; relying on "the commentary Note 1 to encompass accomplice liability"), *cert. denied*, 141 S. Ct. 430 (2020); *United States v. Raupp*, 677 F.3d 756, 757, 759 (7th Cir. 2012) (robbery conspiracy; explaining that Application Note 1, which "tells us that an inchoate offense such as conspiracy is a 'crime of violence' when the underlying crime is one," "disposes of this appeal"); *United States v. Martinez*, 602 F.3d 1166, 1174 (10th Cir. 2010) (attempted burglary; Application Note 1 provides that "when an offense is a crime of violence, so is attempting the offense (as well as aiding and abetting or conspiring to commit the offense)"); *United States v. Fiore*, 983 F.2d 1, 2 (1st Cir. 1992) (conspiracy to break and enter a commercial structure; relying on "[t]he commentary to the federal sentencing guidelines [that] tells us straightforwardly that conspiracy to commit a predicate offense is itself a predicate offense"), *abrogated on other grounds by United States v. Giggey*, 551 F.3d 27, 28 (1st Cir. 2008). Indeed, earlier this year, the Honorable Edgardo Ramos, United States District Judge, faced with a similar defense argument regarding Application Note 1 in the case of attempted robbery in the second degree, concluded, "I think I am required to apply the Second Circuit authority" that the Government cited, "[a]nd I find, therefore, that [the defendant's] prior conviction is a crime of violence." Ex. A (2023.3.23 Tr. *United States v. Barnes* (ER) at 10:22-12:7).

Thus, this Court should apply Second Circuit precedent to find that the defendant's conviction for New York attempted murder qualifies as a crime of violence under the Guidelines.

### 3. The Court Should Impose a Sentence at the Top of the Guidelines Range.

A sentence at the top of the applicable Guidelines range of 27 to 33 months' imprisonment is sufficient and not greater than necessary. Such a sentence is warranted in light of the nature and circumstances of the instant offense and the history and characteristics of the defendant, as well as the need to protect the public and to afford adequate deterrence of future criminal conduct.

"Possession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence. . . Without possession of guns such persons are far less capable of committing acts of violence. The prohibition of gun possession by previously convicted criminals seeks to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime." *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000). Here, the defendant possessed a loaded firearm in the early evening, as he walked into a housing complex in the Bronx. That is dangerous.

This is especially true in light of the defendant's criminal history. On November 25, 2013, the defendant was convicted in Queens County Supreme Court of attempted murder, in violation of New York Penal Law § 125.25(1). The defendant used a box cutter to slash the victim's neck and right side of his face, which caused serious physical injury. (PSR ¶ 42). The defendant was sentenced to six years' imprisonment, followed by three years' post-release supervision for this

offense. While incarcerated, the defendant was cited for harassment, failing to abide by a direct order, creating a disturbance, fighting, violent conduct, drug possession, and possessing contraband. (*Id.*). As a result, the defendant was placed in disciplinary confinement in his cell for several days, lost phone, recreation, and commissary privileges, and lost good time conduct days. (*Id.*). While on post-release supervision for his attempted murder conviction, but before committing the instant offense, the defendant absconded from substance abuse and anger management programs (*id.*) and was arrested on November 6, 2020 for possessing a loaded firearm in Queens (the "2020 Firearm Possession Offense"). (*Id.* ¶ 47). Just as in the instant offense, when the defendant was arrested for the 2020 Firearm Possession Offense, the defendant "pushed another officer on scene out of the way and attempted to run." (*Id.*). The defendant is currently being prosecuted by the Queens District Attorney's Office for the 2020 Firearm Possession Offense and was admitted to bail in that case in September 2021. (*Id.*). Accordingly, the defendant committed the instant offense—possessing a loaded firearm on July 24, 2022—*while charges were currently pending* for possessing a different loaded firearm in November 2020.

Although the defendant has been incarcerated for the instant offense since July 24, 2022, he has refused to attend court conferences in the 2020 Firearm Possession Offense case on at least two occasions since entering the custody of the Bureau of Prisons on October 4, 2022.[5] These include his refusal to attend court conferences on the following dates: (1) November 15, 2022, for a scheduled court appearance designed to provide the court with an update on the status of the instant federal case and for a possible disposition on his Queens case; and (2) January 23, 2023, which was scheduled for the commencement of trial in the Queens case. The prosecuting Queens Assistant District Attorney had prepared five witnesses to appear the week of January 23, 2023 to testify, including out-of-state witnesses for whom the State had arranged flight and hotel accommodations.

The defendant's demonstrated indifference to court conferences and inability to abide by the terms of his supervised release is emblematic of his general disregard for the rule of law. The instant offense is his second firearms offense and was committed while being prosecuted for possessing a loaded firearm just a year-and-a-half earlier. Given that the defendant's prior six-year term of incarceration for attempted murder, and the pending charges in Queens have been insufficient deterrence to dangerous criminal conduct, a sentence at the top of the Guidelines range, 33 months' imprisonment, is necessary to ensure that the defendant does not possess a loaded firearm again, putting other people's lives at risk, when he is released from prison this time around.

---

[5] Despite the defendant's argument that the defendant "has received no federal time credit for the 7½ months that he has been held at MDC Brooklyn since he was writted into federal custody on October 4, 2022," (Defense Ltr. at 5), the defendant consented to detention in the federal custody of the Bureau of Prisons and has refused to abide by all day writs to state custody to attend his state court conferences and trial.

### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence at the top of the applicable Guidelines range of 27 to 33 months' imprisonment.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: */s/ Amanda C. Weingarten*
Amanda C. Weingarten
Assistant United States Attorney
(212) 637-2257

cc: Clay Kaminsky, Esq. (by ECF)